1   Eric B. Hull (# 291167)
2   KERCSMAR & FELTUS PLLC
    7150 East Camelback Road, Suite 285
3   Scottsdale, Arizona 85251
    Telephone: (480) 421-1001
4   Facsimile: (480) 421-1002
5   ebh@kflawaz.com

6   Attorney for Plaintiffs
    ThermoLife International LLC and Ron Kramer
7

8           UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
    Ron Kramer, an individual residing in       Case No. **CV14-6790** MWF-MRW
11  California; ThermoLife International
12  LLC, an Arizona limited liability           **COMPLAINT**
    company,
13
14          Plaintiffs,
    v.
15
    John Romano, an individual residing in      *(Jury Trial Demanded)*
16  Mexico,
17
            Defendants
18
        For their Complaint, plaintiffs ThermoLife International LLC ("ThermoLife"), and
19
    its President, Ron Kramer, allege as follows:
20
21              **PARTIES AND RELEVANT THIRD PARTIES**
22      1.      ThermoLife is a limited liability company organized and existing under the
23  laws of the State of Arizona, with its principal place of business located in Phoenix,
24  Arizona.
25      2.      Mr. Kramer is the President and Chief Executive Officer of ThermoLife. He is
26  a citizen of California living in Venice Beach.
27      3.      Upon information and belief, John Romano is currently a resident of
28  Guadalajara, Mexico.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

FILED
CLERK, U.S. DISTRICT COURT

AUG 29 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

4.     He is the author of a bodybuilding blog found and accessed at http://romanoroberts.com.mx/ (the "Romano/Roberts Website").

5.     On the Romano/Roberts Website, Mr. Romano shares his libertarian views regarding the use of steroids and other topics related to bodybuilding.

6.     Mr. Romano and Jane Doe Romano are husband and wife. At all times material hereto, Defendant was acting on behalf of and for the benefit of his marital community with defendant Jane Doe Romano.

7.     Upon information and belief, Mr. Romano is a U.S. citizen but has moved to Mexico to avoid U.S. laws and regulations he believes impinge upon his "freedoms."

8.     In a self-authored profile regarding his move to Mexico, Mr. Romano wrote: "Personal freedom is a huge reason for me to move. I want to spend the next phase of my life running a killer gym where I can dispense my career's worth of knowledge to help people become healthy, fit and extend their lives. I'm not interested in doing it here because doing so will have me focusing more on not breaking the law, complying with way too many regulations, paying for permits and paying huge taxes." [http://www.vpxsports.com/article-detail/industry-news/exodus-part-ii] (Attached as **Exhibit 1**.)

9.     According to Mr. Romano, that personal freedom includes the right to steroids. In an interview he explained his plans in Mexico: "I'm also developing a program with a couple of doctors I know to bring people down to Mexico, put them up in a nice hotel suite near our gym, and put them through four-, six-, and eight-week diet, training, supplement, and drug programs—that are not legal in the US—for anti-aging, bodybuilding, or just overall aesthetics." [http://muscle-insider.com/columns/john-romano-sets-record-straight] (Attached as **Exhibit 2**.)

10.    The other author of the Romano/Roberts Website is Third Party Anthony Connors, a citizen of the state of New Jersey.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

11. Under the alias Anthony Roberts, Mr. Connors has used the Romano/Roberts Website and previous websites to post defamatory material about ThermoLife and Kramer.

12. To that end, on March 17, 2014, the Federal District Court of New Jersey issued an Order specifically prohibiting Mr. Connors from "[m]aking any false statement on the internet to the effect that Ron Kramer was the source or informant that led to the Bay Area Labs Co-Operative ("BALCO") investigation." (*See* Order (3/17/14), attached as **Exhibit 3**.)

## JURISDICTION

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

14. This Court has specific personal jurisdiction over Mr. Romano with respect to the claims stated in this Complaint.

15. Mr. Romano aimed his tortious conduct at Mr. Kramer knowing that the effects would be felt in California.

16. The Romano/Roberts Website addresses Mr. Kramer's presence in California in several posts.

17. In a post discussing Mr. Kramer's donation of used weight equipment to the LAPD, the Romano/Roberts Website states: "and since [Mr. Kramer] moved to Venice Beach, it stands to reason that he is under the supervision of the LA Police and LA Probation Department . . . ." [http://romanoroberts.com.mx/ron-kramer-of-thermolife-on-probation-and-making-donations-to-the-lapd/] (Attached as **Exhibit 4**.)

18. The Romano/Roberts Website also makes it purpose in attacking Mr. Kramer clear. In a post that attaches a heavily redacted victim report, it states, "Just so you know…when you support Thermolife, either by purchasing their terrible product(s?) or

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1   licensing their patent, you are supporting a man who threatened to kill me and my family.

2   Act   accordingly."   [http://romanoroberts.com.mx/no_hype-unmasked-by-usp-labs/]

3   (Attached as **Exhibit 5**.)

4       19.   In other words, Mr. Romano intentionally and knowingly targeted Mr. Kramer

5   and his business in California thereby establishing personal jurisdiction under the effects

6   test established in *Calder v. Jones*, 465 U.S. 783 (1984) and its progeny.

7   <u>**VENUE**</u>

8       20. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a

9   substantial part of the events and omissions giving rise to this claim occurred in this

10  district when this action was originally instituted, and Defendant is subject to personal

11  jurisdiction in this District.

12  <u>**FACTUAL ALLEGATIONS**</u>

13  **I.   KRAMER   ESTABLISHES   THERMOLIFE:   AN   INNOVATIVE**
    **SUPPLEMENT   COMPANY   COMMITTED   TO   SELLING**
14  **SCIENTIFICALLY PROVEN PRODUCTS.**

15      21.   Prior to founding ThermoLife, Mr. Kramer was a gym owner who had

16  competed in bodybuilding and later promoted professional bodybuilding competitions for

17  the International Federation of Bodybuilders.

18      22.   Between 1994 and 1997, Mr. Kramer opened a Gold's Gym in Santa Cruz,

19  California.

20      23.   During his time as a bodybuilder, promoter, and gym owner, Mr. Kramer

21  discovered that many supplements failed to meet any quality control standards. Often

22  supplements are spiked with hidden ingredients and/or labeled incorrectly.

23      24.   At the time ThermoLife was established, few supplements were clinically

24  researched or field tested. Even today, relatively few supplements have been proven to

25  work as advertised.

26

27

28

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

4

25.   In 1998, Mr. Kramer founded ThermoLife in order to provide the public with quality proven supplements. ThermoLife is committed to selling only the purest, most powerful and innovative products.

26.   By relying on supposedly proprietary formulas, supplement companies often hide the ingredients in their products from consumers. Unlike other supplement companies, ThermoLife develops unique and novel products and formulas that it fully discloses to the public. In this way, ThermoLife allows consumers to know exactly what products and raw materials they consume.

27.   Because—unlike other supplement companies—ThermoLife does not hide its formulas from consumers and the public, in order to keep competitors from copying its products ThermoLife relies on the protections afforded inventors for unique and novel goods under United States patent law.

28.   ThermoLife has been awarded patents on 13 individual compounds. These patents protect ThermoLife's innovative and proven products from being copied by ThermoLife's competitors.

29.   By fully disclosing its formulas and relying on scientifically proven and protected formulas and ingredients, ThermoLife has taken a lead role in ending the deceptive business practices that have plagued the supplement industry.

30.   Mr. Kramer has also taken a lead role in exposing some of the deceptive business practices used by other supplement companies. ThermoLife consistently analyzes and tests other companies' supplements. When independent third party lab analysis reveals that the supplements tested are not as advertised Kramer has often posted this information on bodybuilding message boards in order to inform the unsuspecting consumer of these frauds/inaccuracies.

31.   Mr. Kramer is known on the internet by the name "Truth Speaker."

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

**II.   ROMANO AND ROBERTS ESTABLISH THEIR WEBSITE.**

32.   On or about February 2013, Mr. Romano began writing on the Romano/Roberts Website.

33.   Upon information and belief, Mr. Romano chose to register the Romano/Roberts Website in Mexico in order to evade repercussions of the U.S. legal system for the defamatory content of his Website.

34.   When the Romano/Roberts Website is accessed, it states that it is "The Official Website of John Romano and Anthony Roberts." Anthony Roberts is Mr. Connors' pseudonym.

35.   To that end, Mr. Romano and Mr. Connors often co-author articles that appear under a single byline or an administrative byline.

36.   For example, in a post uploaded on October 31, 2013, Mr. Romano and Mr. Connors entitled their joint entry, "Happy Halloween From John Romano and Anthony Roberts." That post simply contains a photo–shopped picture where the authors have pasted a picture of Mr. Kramer's face behind the wheel of a windowless van with the words "FREE CANDY" painted on the side. [http://romanoroberts.com.mx/happy-halloween-from-john-romano-and-anthony-roberts/] (Attached as **Exhibit 6**.)

37.   A January 25, 2014 post entitled "Steroids, Crossfit, and The Crossfit Games: Who & How" is attributed to Mr. Romano but the co-authors make it explicit that each contributed to the post. [http://romanoroberts.com.mx/steroids-crossfit-and-the-crossfit-games-who-how/] (Attached as **Exhibit 7**.)

38.   Upon information and belief, when Mr. Romano and Mr. Connors began the Romano/Roberts Website, Mr. Romano was aware that Mr. Connors had been found liable for defamatory statements on a previous blog in the Federal District of New Jersey.

39.   Nonetheless, Mr. Romano agreed with Mr. Connors to defame Mr. Kramer and ThermoLife, acted in combination and in concert to carry out that defamation with Mr. Connors, and together they have performed an overt act that resulted in damage.

6

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

40.   In an Order finding Mr. Connors' actions defamatory and enjoining Mr. Connors from further defamatory activities, the District of New Jersey also enjoined "other persons who are in active concert or participation with [Mr. Connors.]"

41.   The Romano/Roberts Website discusses much of the same content that the District of New Jersey previously found defamatory.

**III.      ROMANO ATTACKS KRAMER AND THERMOLIFE.**

42.   Since its inception, the Romano/Roberts Website has focused disproportionately on ThermoLife and Mr. Kramer's activity in the dietary supplement community.

43.   The Romano/Roberts Website has well over a dozen posts containing false information about ThermoLife's products, the raw materials included in ThermoLife's products, ThermoLife's patents, ThermoLife's assertions of patent protection, and Kramer personally.

44.   These posts disseminate falsehoods regarding Mr. Kramer's involvement in the BALCO steroids scandal, ThermoLife's creatine nitrate products, Mr. Kramer's patent cases, and various personal attacks.

**A.      Personal Attacks**

45.   The Romano/Roberts Website includes numerous vile and immature accusations that are clearly defamatory in nature.

46.   A May 6, 2013 post entitled, "Phosphodiesterase type 5 inhibitors and erectile dysfunction," contains only a picture of Mr. Kramer with a woman. [http://romanoroberts.com.mx/phosphodiesterase-type-5-inhibitors-and-erectile-dysfunction/] (Attached as **Exhibit 8**.)

47.   The obvious inference is that Mr. Kramer suffers from erectile dysfunction.

48.   In another post uploaded on October 31, 2013, Mr. Romano and Mr. Connors entitled their joint entry, "Happy Halloween From John Romano and Anthony Roberts." That post simply contains a photo–shopped picture where the authors have pasted a

7

picture of Mr. Kramer's face behind the wheel of a windowless van with the words "FREE CANDY" painted on the side. [http://romanoroberts.com.mx/happy-halloween-from-john-romano-and-anthony-roberts/] (*See* Exhibit 6.)

49.   The obvious implication is that Mr. Kramer is a danger to children. This has no basis in reality.

50.   Both of these attacks are defamatory in that they are falsehoods intended only to hold Mr. Kramer up to ridicule and disrepute.

51.   Mr. Romano authored these posts to harass and injure Mr. Kramer.

52.   Mr. Romano's defamatory statements have also caused and continue to cause irreparable harm to Mr. Kramer's reputation.

53.   Because Defendant's defamatory statements are still available on the internet and barring an order from this Court those statements will not be removed from the internet, permanent injunctive relief is necessary to prevent further irreparable harm to Mr. Kramer.

54.   To prevent further immediate and irreparable harm to Mr. Kramer, a permanent injunction should enter requiring the Defendant and those acting in concert with him to remove from the internet any information he has published about Mr. Kramer.

55.   Furthermore, Defendant has demonstrated that he will continue to publish false and defamatory information concerning Mr. Kramer.

56.   The continued publication of false and defamatory information causes direct, immediate and irreparable harm to Mr. Kramer.

57.   Accordingly, a permanent injunction should also enter barring Defendant and those acting in concert with him from posting information on the internet of and concerning ThermoLife, Mr. Kramer, or any business associated with Mr. Kramer. At a minimum, in order to prevent further irreparable harm to Mr. Kramer, the Court should enter a permanent injunction requiring the Defendant and those acting in concert with

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1  him to seek the Court's permission before posting any information on the internet of or

2  concerning Mr. Kramer, ThermoLife, or associated businesses.

3  **B.   The BALCO Lie**

4  58.   The Romano/Roberts Website has persistently accused Mr. Kramer of being

5  involved with one of the biggest scandals in the history of professional sports and

6  performance enhancing drugs, Bay Area Laboratory Co-Operative ("BALCO").

7  59.   In 2003, BALCO distributed a steroid that was not detectable at time. Several

8  athletes have been accused of using this steroid for a competitive advantage, including

9  Olympians Tim Montgomery and Marion Jones and professional baseball player Barry

10  Bonds.

11  60.   On September 3, 2003, agents of the Internal Revenue Service, Food and Drug

12  Administration, San Mateo Narcotics Task Force, and USADA conducted a search at the

13  BALCO facilities.

14  61.   The Romano/Roberts Website repeatedly alleges that Mr. Kramer was the

15  informant, or "rat," that brought down BALCO.

16  62.   Mr. Kramer has previously sued Mr. Romano's co-author, Mr. Connors, for

17  making this allegation on other websites and obtained an award of damages and an

18  injunction.

19  63.   The injunction specifically prohibits Mr. Connors from "[m]aking any false

20  statement on the internet to the effect that Ron Kramer was the source or informant that

21  led to the Bay Area Labs Co-Operative ("BALCO") investigation." (*See* Exhibit 3.)

22  64.   Critically, the Order is binding upon Mr. Connors and his "agents, servants …

23  and other persons who are in active concert or participation with Mr. Connors." (*Id.*)

24  65.   Despite knowledge of this Order and knowing that the allegation is false, Mr.

25  Romano has authored posts referencing Mr. Kramer's alleged role in the BALCO scandal

26  and acts in concert with Mr. Connors to post material alleging that Mr. Kramer is the

27  BALCO informant.

28

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

66.   On January 13, 2014, Mr. Romano authored a post on the Romano/Roberts Website entitled, "Kramer Loses Again And Doesn't Go Down Alone." [http://romanoroberts.com.mx/kramer-loses-again-and-doesnt-go-down-alone/] (Attached as **Exhibit 9**.)

67.   That post included a cartoon rat that is clearly intended to resemble Mr. Kramer and makes several defamatory statements about Mr. Kramer and ThermoLife. The cartoon rat also appears in a January 13, 2014 post found at [http://romanoroberts.com.mx/full-termination-40-pages-and-decision-in-thermolife-v-gaspari/]. (Attached as **Exhibit 10**.)

68.   The post refers to Mr. Kramer as a "federal informant (rat)."

69.   The statement alleging that Mr. Kramer is a "federal informant (rat)" provides a hyperlink to a May 8, 2013 post on the Romano/Roberts Website that is a word for word recitation of a post the Federal District of New Jersey previously found defamatory. [found at   http://romanoroberts.com.mx/tony-serra-declaration-that-ronald-kramer-was-balco-informant-smoking-gun-online-article/] (Attached as **Exhibit 11**.)

70.   The post also provides a picture of an uncited source that refers to Mr. Kramer as the BALCO informant.

71.   This picture is also included in a May 6, 2013 post entitled, "Thermolife V. SNAC." [http://romanoroberts.com.mx/thermolife-v-snac-2/] (Attached as **Exhibit 12**.)

72.   Mr. Romano even brags, "We have tons of Kramer court docs posted here. Read 'em and weep." His intent is clearly to hold Mr. Kramer and ThermoLife up to ridicule and disrepute based on the Romano/Roberts Website's injurious allegations.

73.   Mr. Romano's "Official Website" contains numerous other references to Mr. Kramer and BALCO.

74.   Upon information and belief, even where the byline may indicate otherwise, Mr. Romano has input into the authoring of a post on the Romano/Roberts Website.

75.   In a January 12, 2014 post under Mr. Connors' byline on the Romano/Roberts Website entitled, "Thermolife loses against Gaspari: Kramer lies again," it states: "[Mr. Kramer] can't help it, his inability to tell the truth is bordering on sociopathic (and yes, it's on the wrong side of that border), and with very little effort (as usual) I'm going to expose Ron 'The BALCO Informant' Kramer, as a liar (again, for the millionth time)." [http://romanoroberts.com.mx/thermolife-loses-against-gaspari-kramer-lies-again/] (Attached as **Exhibit 13**.)

76.   In an April 17, 2014 post entitled "BPI: Caught Stealing from Driven Sports," the author references Mr. Kramer and BALCO even though Mr. Kramer has, at most, a tenuous connection to the subject matter of the article. [http://romanoroberts.com.mx/bpi-caught-stealing-from-driven-sports/] (Attached as **Exhibit 14**.)

77.   That post states: "On 4/27/01, it was revealed that Kramer was an informant working for the San Mateo Narcotics Task Force, since the arrest stemming from the search of his premises in February of 2000."

78.   It goes on to state: "The case involved a tip from San Francisco, where Kramer had been working as an informant, and concerned compounds (*GHB/GBL-type drugs and tiratricol) that he had been involved with. I'm providing these details simply to insure proper context on what was going on at the time, and whom Ettinger/Genapharm had dealings with."

79.   In a March 26, 2014 post entitled "The Dirty on Ron Kramer of Thermolife," the authors post a thedirty.com submission with a picture of Mr. Kramer with Arnold Schwarzenegger calling Mr. Kramer a "steroid dealing informant." [http://romanoroberts.com.mx/the-dirty-on-ron-kramer-of-thermolife/] (Attached as **Exhibit 15**.)

80.   TheDirty.com allows users to upload their own gossip and the editorial staff and other users can comment on those posts.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

81.   Upon information and belief, Mr. Romano and/or Mr. Connors submitted the piece about Mr. Kramer and Mr. Schwarzenegger that was then reposted on the Romano/Roberts Website.

82.   In a May 8, 2013 post entitled, "Tony Serra Declaration that Ronald Kramer was BALCO informant (+Smoking Gun online article)," the author (listed only as "admin") posts a declaration from Tony Serra. [http://romanoroberts.com.mx/tony-serra-declaration-that-ronald-kramer-was-balco-informant-smoking-gun-online-article/]   (*See* Exhibit 11.)

83.   Contrary to the title of the post, the declaration states only that Tony Serra "believe[s]" Mr. Kramer is the informant.

84.   The declaration does not provide the basis of that belief.

85.   The post also provides a screen shot of withdrawn Smoking Gun article suggesting that Mr. Kramer is the BALCO informant. That article is no longer posted on The Smoking Gun website.

86.   Upon information and belief, Mr. Romano and/or Mr. Connors were the source of the Smoking Gun article that was then reposted on the Romano/Roberts Website.

87.   In a December 21, 2013 post entitled, "Alison Young: Journalism Shell Game," the author complains "that although Alison Young clearly mentions both Thermolife and BALCO (in the previous screenshots), she fails to mention the connection between the two . . . ." The post them provides internal and external links to materials calling Mr. Kramer the BALCO informant. [http://romanoroberts.com.mx/alison-young-journalism-shell-game/]   (Attached as **Exhibit 16**.)

88.   Directly contrary to the statements included on Defendant's website, Mr. Kramer was not involved with BALCO.

89.   Mr. Kramer did not provide any names of any person involved with BALCO to government authorities.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

90.   Each of the statements on the Romano/Roberts Website regarding Mr. Kramer being an "informant" is demonstrably false.

91.   The bodybuilding community, of which Mr. Kramer is a part and on whom Mr. Kramer relies for his livelihood, does not favor informants on issues of steroids. The vitriol on the Romano/Roberts Website reflects this fact.

92.   Mr. Romano posted these falsehoods with the intent to injure Mr. Kramer personally and to damage ThermoLife, Mr. Kramer's business.

93.   Upon information and belief, Mr. Romano and Mr. Connors agreed to post this defamatory material about Mr. Kramer and ThermoLife on their shared website.

94.   Defendant's defamatory statements are easily found using any Internet search engine.

95.   These statements have caused damage to ThermoLife and Kramer in an amount not less than $1,000,000.00.

96.   Defendant's statements have caused ThermoLife and Kramer to lose business and goodwill and have reduced ThermoLife's business expectancies.

97.   Defendant's defamatory statements have also caused and continue to cause irreparable harm to ThermoLife's and Kramer's goodwill and business reputation.

98.   Because Defendant's defamatory statements are still available on the internet and barring an order from this Court those statements will not be removed from the internet, permanent injunctive relief is necessary to prevent further irreparable harm to ThermoLife's and Kramer's business reputation and goodwill. To prevent further immediate and irreparable harm to ThermoLife and Kramer, a permanent injunction should enter requiring the Defendant and those acting in concert with him to remove from the internet any information he has published about ThermoLife and Kramer.

99.   Furthermore, Defendant has demonstrated that he will continue to publish false and defamatory information concerning Kramer and ThermoLife. The continued publication of false and defamatory information causes direct, immediate and irreparable

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

harm to Kramer and ThermoLife. Accordingly, a permanent injunction should also enter barring Defendant and those acting in concert with him from posting information on the internet of and concerning ThermoLife, Mr. Kramer, or any business associated with Mr. Kramer. At a minimum, in order to prevent further irreparable harm to Mr. Kramer and ThermoLife, the Court should enter a permanent injunction requiring the Defendant and those acting in concert with him to seek the Court's permission before posting any information on the internet of or concerning Mr. Kramer, ThermoLife, or associated businesses.

**C. Defendant Falsely Accuses Mr. Kramer and ThermoLife of Being "Patent Trolls."**

100. "Patent troll" is a pejorative term primarily used to describe a person or company who enforces patent rights against accused infringers in an attempt to collect licensing fees, but does not manufacture products or supply services based upon the patents in question.

101. On the Romano/Roberts Website, Mr. Romano repeatedly accuses Mr. Kramer of being a patent troll.

102. He does so even though in a November 11, 2013 post entitled "Harcol Research, LLC – more patent trolling from The Newport Trial Group," it concedes that in relation to Mr. Kramer and ThermoLife the term, "is kind of an *asterisk kind of thing because they actually sell some products in the category they're trolling . . . ." [http://romanoroberts.com.mx/harcol-research-llc-more-patent-trolling-from-the-newport-trial-group/] (Attached as **Exhibit 17**.)

103. In other words, even Mr. Romano concedes that Mr. Kramer and ThermoLife are not patent trolls.

104. Despite this admission that Mr. Kramer and ThermoLife are actually not patent trolls, the Romano/Roberts Website repeatedly uses the label to describe the Plaintiffs.

105. The post referenced in Paragraph 102 states, "At my last accounting, the biggest troll in the dietary supplement industry was Ron Kramer and Thermolife . . . ."

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

14

106. Two other posts refer to Mr. Kramer and ThermoLife as "patent trolls." One is posted at [http://romanoroberts.com.mx/thermolife-named-third-biggest-patent-troll-of-2013-study/] and the other at [http://romanoroberts.com.mx/thermolife-named-as-patent-troll-in-newhope360-com-article/]. (Attached as **Exhibits 18 and 19**.)

107. In addition, in the January 13, 2014 Post authored by Mr. Romano entitled, "Kramer Loses Again And Doesn't Go Down Alone," he refers to Mr. Kramer as a "federal informant (rat)," and "litigious patent trolling pond scum." [http://romanoroberts.com.mx/kramer-loses-again-and-doesnt-go-down-alone/] (*See* Exhibit 9.)

108. The post states, "To date Kramer has done little more than attempt to extort companies into paying him, fruitlessly."

109. The post further states: "Unfortunately, it is also human nature that Kramer is a bad guy. Somewhere, lower down in the species, the genes connect to make a bully. In this case it's a litigious punk who hides behind high-paid lawyers while he patent trolls the industry looking for ways he thinks he can bully the captains of our industry and get them to waste millions of dollars defending frivolous law suits in which Kramer never wins a legitimate judgment."

110. Each of the statements on the Romano/Roberts Website regarding Mr. Kramer and ThermoLife being "patent trolls" is demonstrably false.

111. In fact, ThermoLife uses the patents it seeks to protect.

112. The proliferation of litigation is due to the fact that many companies in the dietary supplement industry simply do not respect the intellectual property of others.

113. The term "patent troll" is inherently injurious to the business interests of Mr. Kramer and ThermoLife.

114. Mr. Romano posted these falsehoods with the intent to injure Mr. Kramer personally and to damage ThermoLife, Mr. Kramer's business.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

115. Notably, the Romano/Roberts Website admits that the authors intend to injure Plaintiffs, plainly stating the intention behind spreading this lie: To encourage "[c]onsumers [to] simply boycott Thermolife and any company licensing anything from them – and frankly, consumers can boycott Europa and GNC too, if they don't like it. This problem can literally go away overnight if we want it to." [http://romanoroberts.com.mx/harcol-research-llc-more-patent-trolling-from-the-newport-trial-group/] (*See* Exhibit 17.)

116. Upon information and belief, Mr. Romano and Mr. Connors agreed to post this defamatory material about Mr. Kramer and ThermoLife on their shared website.

117. Defendant's defamatory statements are easily found using any Internet search engine.

118. These statements have caused damage to ThermoLife and Mr. Kramer in an amount not less than $1,000,000.00.

119. Defendant's statements have caused ThermoLife and Mr. Kramer to lose business and goodwill and have reduced ThermoLife's business expectancies.

120. Defendant's defamatory statements have also caused and continue to cause irreparable harm to ThermoLife's and Mr. Kramer's goodwill and business reputation.

121. Because Defendant's defamatory statements are still available on the internet and barring an order from this Court those statements will not be removed from the internet, permanent injunctive relief is necessary to prevent further irreparable harm to ThermoLife's and Kramer's business reputation and goodwill. To prevent further immediate and irreparable harm to ThermoLife and Mr. Kramer, a permanent injunction should enter requiring the Defendant and those acting in concert with him to remove from the internet any information he has published about ThermoLife and Kramer.

122. Furthermore, Defendant has demonstrated that he will continue to publish false and defamatory information concerning Kramer and ThermoLife. The continued publication of false and defamatory information causes direct, immediate and irreparable

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

harm to Kramer and ThermoLife. Accordingly, a permanent injunction should also enter barring Defendant and those acting in concert with him from posting information on the internet of and concerning ThermoLife, Mr. Kramer, or any business associated with Mr. Kramer. At a minimum, in order to prevent further irreparable harm to Mr. Kramer and ThermoLife, the Court should enter a permanent injunction requiring the Defendant and those acting in concert with him to seek the Court's permission before posting any information on the internet of or concerning Mr. Kramer, ThermoLife, or associated businesses.

<u>**COUNT I**</u>

**(Defamation)**

123. ThermoLife and Mr. Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

124. The Romano/Roberts Website is a publication.

125. Mr. Romano is an author of the Romano/Roberts Website.

126. The personal attacks, allegations regarding Mr. Kramer's involvement in the BALCO scandal and allegations that ThermoLife is a patent troll are all false as stated.

127. All of the statements against Mr. Kramer and/or ThermoLife are defamatory because they expose Mr. Kramer and/or ThermoLife to ridicule, have a tendency to diminish his reputation, and hurt his occupation.

128. The statement is defamatory if it exposes a person to hatred, contempt, ridicule, or obloquy; causes the person to be shunned or avoided; or has a tendency to injure the person in his or her occupation.

129. The false statements have a natural tendency to injure the business interests of Mr. Kramer and ThermoLife.

130. Mr. Romano has no privilege that entitles him to defame Mr. Kramer or ThermoLife.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

131.  Mr. Romano made the statements to hold Mr. Kramer up to ridicule or hurt ThermoLife's business and goodwill.

132. Mr. Romano accomplished his goal of harming Plaintiffs.

133. Mr. Romano committed his acts against ThermoLife and Mr. Kramer, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife's and Mr. Kramer's rights, with evil mind and intent to injure ThermoLife and Mr. Kramer.

## COUNT II

### (Aiding and Abetting Defamation)

134. ThermoLife and Mr. Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

135. To the extent Mr. Romano attempts to evade authorship for the defamatory statements on his "Official Website," he has aided and abetted the defamatory conduct represented on the Romano/Roberts Website.

136. Mr. Romano knew Mr. Connors made defamatory statements.

137. He was aware of a federal court order finding certain allegations defamatory.

138. He nonetheless substantially assisted and encouraged that defamatory conduct.

139. All of the statements against Mr. Kramer and/or ThermoLife are defamatory because they expose Mr. Kramer and/or ThermoLife to ridicule, have a tendency to diminish his reputation, and hurt his occupation.

140. The statement is defamatory if it exposes a person to hatred, contempt, ridicule, or obloquy; causes the person to be shunned or avoided; or has a tendency to injure the person in his or her occupation.

141. The false statements have a natural tendency to injure the business interests of Mr. Kramer and ThermoLife.

142. The defamatory statements harmed Plaintiffs.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

143. Mr. Romano committed his acts against ThermoLife and Mr. Kramer, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife's and Mr. Kramer's rights, with evil mind and intent to injure ThermoLife and Mr. Kramer.

## COUNT III

### (Conspiracy to Defame)

144. ThermoLife and Mr. Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

145. Mr. Romano and Mr. Connors agreed to form the Romano/Roberts Website.

146. As part of that agreement, they agreed to make defamatory statements regarding Mr. Kramer and ThermoLife.

147. To that end, they authored the defamatory statements outlined above.

148. All of the statements against Mr. Kramer and/or ThermoLife are defamatory because they expose Mr. Kramer and/or ThermoLife to ridicule, have a tendency to diminish his reputation, and hurt his occupation.

149. The statement is defamatory if it exposes a person to hatred, contempt, ridicule, or obloquy; causes the person to be shunned or avoided; or has a tendency to injure the person in his or her occupation.

150. The false statements have a natural tendency to injure the business interests of Mr. Kramer and ThermoLife.

151. The defamatory statements harmed Plaintiffs.

152. Mr. Romano committed his acts against ThermoLife and Mr. Kramer, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife's and Mr. Kramer's rights, with evil mind and intent to injure ThermoLife and Mr. Kramer.

## COUNT IV
### (Portraying a Person in a False Light)

153. ThermoLife and Mr. Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

154. Mr. Romano disseminated information regarding Mr. Kramer on the Romano/Roberts Website.

155. That information is false and erroneous.

156. Mr. Romano's false assertions place Mr. Kramer in a derogatory and false light.

157. Mr. Romano's various assertions would be offensive to a reasonable person.

## JURY TRIAL DEMAND

158. If available at law, Plaintiffs request a trial by jury on all aspects of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, ThermoLife and Mr. Kramer demand judgment in their favor and against John Romano and Jane Doe Romano as follows:

A.   Awarding ThermoLife and Mr. Kramer damages on Count I in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

B.   Awarding ThermoLife and Mr. Kramer damages on Count II in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

C.   Awarding ThermoLife and Mr. Kramer damages on Count III in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

D.   Awarding ThermoLife and Mr. Kramer damages on Count IV in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

E.   Awarding ThermoLife and Mr. Kramer punitive damages in an amount sufficient to punish Defendants John Romano and Jane Doe Romano and deter other similarly situated individuals from engaging in tortious conduct;

F.   An Order permanently enjoining John Romano and Jane Doe Romano, which requires that they remove from the internet all posts authored by either John Romano and Jane Doe Romano or any person or persons in active concert or participation with them, related to ThermoLife and Kramer.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

G.    An Order temporarily restraining, and preliminarily and permanently enjoining, John Romano and Jane Doe Romano and all those persons in active concert or participation with them, from making statements on the internet about ThermoLife or Mr. Kramer. At a minimum, the Court should enter an order requiring John Romano and Jane Doe Romano and all those persons in active concert or participation with them, from making statements on the internet about ThermoLife or Mr. Kramer without first obtaining an order from this Court that the statements are not defamatory or an order that the statements are otherwise protected speech;

H.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action;

I.    Awarding prejudgment and post-judgment interest to the extent allowable by law; and

J.    Granting ThermoLife and Mr. Kramer such further and additional relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this ___ day of _____, 2014.

KERCSMAR & FELTUS PLLC

By:_____
Eric B. Hull
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for ThermoLife International LLC*

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

21

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Kramer, Ron
ThermoLife International, LLC

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
Romano, John

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Eric B. Hull
Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285, Scottsdale, Arizona 85251
(480) 421-1001

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 1,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332(a). Defamation action between diverse parties.

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/Etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Org.
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Info. Act
☐ 896 Arbitration
☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.)
☐ 153 Recovery of Overpayment of Vet. Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpratice
☐ 365 Personal Injury-Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 445 American with Disabilities-Employment
☐ 446 American with Disabilities-Other
☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405 (g))
☐ 864 SSID Title XVI
☐ 865 RSI (405 (g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

CV14-6790

**FOR OFFICE USE ONLY:**   Case Number:

CV-71 (06/14)   CIVIL COVER SHEET   Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. → | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _~signature~_    DATE: 8/29/14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |